FILED

02/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0364

DA 19-0364

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 23N

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

JOSEPH WAYNE MARSH,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DC 17-06
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Penelope S. Strong, Attorney at Law, Billings, Montana

        For Appellee:

            Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

            Nancy L. Rohde, Stillwater County Attorney, Columbus, Montana

Submitted on Briefs:  January 6, 2021

Decided:  February 2, 2021

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Joseph Wayne Marsh appeals from his April 5, 2018 judgment and sentence to serve a forty-year prison term, with no time suspended. We affirm.

¶3 On December 21, 2017, Joseph Wayne Marsh (Marsh) pleaded guilty to felony sexual abuse of children under § 45-5-625(1)(d), MCA, based on the download and possession of, as well as use of peer-to-peer file-sharing software for, an extremely large amount of child pornography. As part of the plea, the State agreed not to argue at sentencing that Marsh's prior court martial based on a similar offense triggered a mandatory life without release sentence under § 46-18-205, MCA, though it reserved the right to raise it as a sentencing consideration.

¶4 The District Court held a sentencing hearing on March 12, 2018, prior to which Marsh's counsel filed a sentencing memorandum containing dozens of letters of support from members of Marsh's community. Dee Woolston, a licensed psychologist, testified as to his evaluation of Marsh, describing Marsh's autism spectrum disorder as potentially contributing to Marsh's compulsive collection of pornography. Marsh's pastors and his adoptive mother testified on Marsh's behalf, describing the lasting impacts of his biological

2

mother's drug abuse and his life-long learning and social disabilities. Licensed clinical social worker Michael Sullivan (Sullivan) testified as to his psychosexual evaluation of Marsh, assessing Marsh's risk to reoffend as a moderate Level II for registration and a moderate risk to touch a child. Sullivan described a high level of structured supervision and accountability as the most appropriate outcome for Marsh. Bradley Pinnick (Pinnick), a state probation officer, testified regarding his presentence investigation report (PSI), which used a diagnostic tool—not specific to sex offenders—that categorized Marsh as having a low risk of reoffending. Despite this diagnostic categorization, Pinnick recommended a long period of supervision for Marsh.

¶5 Marsh's counsel recommended a 20-year Montana Department of Corrections (DOC) commitment with 15 years suspended, which would allow the DOC to select an appropriate facility for Marsh's placement, such as a prerelease center as had been recommended by Sullivan. *See* § 46-18-201(3)(a)(iii-iv), MCA (providing that a sentencing court may impose a sentence of either a term of prison incarceration or a commitment to the DOC for placement in an appropriate facility or program).

¶6 However, the District Court expressed concern regarding three sentencing statutes that the court felt would undermine the effectiveness of a DOC commitment sentence, rather than a sentence of prison incarceration. The District Court heard testimony that, because of Marsh's low risk designation under the PSI, a probationary sentence would trigger a recently-amended statutory provision requiring the DOC to seek Marsh's release from supervision within nine months. *See* § 46-23-1011(6), MCA (2017) (providing that probation and parole officer shall recommend conditional discharge for a low-risk

3

compliant probationer having served nine months). The District Court responded that it was "not too interested in" having the DOC "come in under the new statutes and request early termination."

¶7 The District Court also expressed concern regarding a second statutory provision requiring that a sentence of a DOC commitment be suspended for all but five years, thus preventing the court from mandating long-term custody under a DOC commitment sentence. *See* § 46-18-201(3)(a)(iv)(A), MCA (2017). Finally, the District Court found it "very worrisome" that, under another statutory amendment, such a suspended sentence could result in a petition for termination of the remaining sentence being automatically granted if the court did not act upon it within 30 days. *See* § 46-18-208, MCA (2017) (providing that a parole officer may file a petition to terminate remaining time on sentence for a qualifying defendant serving a suspended sentence and that the remaining sentence is terminated 30 days after the petition is filed if the court does not require a hearing).

¶8 The District Court indicated concern that its goal of ensuring long-term supervision might be "short-circuited" by these statutory provisions unless the court imposed a sentence mandating prison time. The sentencing judge expressed frustration with amendments that he felt "kind of vitiates what I tried to do from the beginning," noting that while he did not "know what the legislature intended, frankly," the result was that "now the only way to get [long-term supervision] is a prison sentence." Defense counsel did not disagree with or object to this understanding of the law. The District Court described the outpouring of community support for Marsh as laudable, but found that "[u]nfortunately, because of the state of the sentencing requirements that we now have and the Court's

4

intention that there be a long period of supervision, I think all I am left with at this point is a significant prison term." The court sentenced Marsh to a 40-year prison sentence with no time suspended.

¶9     On June 6, 2018, Marsh filed a pro se request for sentence review but, upon subsequently consulting with counsel, moved to dismiss the application without prejudice in order to pursue an out-of-time appeal. On July 16, 2019, this Court granted Marsh's petition for an out-of-time appeal.

¶10     On appeal, Marsh argues that the District Court's sentence rested on an improper understanding of the effect of statutory changes, implicating Marsh's due process rights. Furthermore, Marsh contends that he suffered ineffective assistance of counsel as his attorney did not request that the sentencing court explicitly consider the nonviolent offender criteria described in § 46-18-225, MCA.

¶11     We generally do not address issues not raised below. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (citation omitted). However, we will review criminal sentences for legality, determining whether the sentence is within statutory parameters. *State v. Whalen*, 2013 MT 26, ¶ 19, 368 Mont. 354, 295 P.3d 1055 (citation omitted). We may also exercise our discretion to engage in review for plain error of unpreserved issues when an appellant "firmly convinc[es]" us that the "claimed error implicates a fundamental right and that such review is necessary to prevent a manifest miscarriage of justice or that failure to review the claim may leave unsettled the question of fundamental fairness of the proceedings or may compromise the integrity of the judicial process." *George*, ¶ 5 (citations omitted). We will review record-based ineffective assistance of counsel claims

5

as mixed questions of law and fact. *State v. Flowers*, 2018 MT 96, ¶ 13, 391 Mont. 237, 416 P.3d 180 (citation omitted).

¶12 Marsh's 40-year sentence was within the 100-year statutory maximum for felony sexual abuse of children under § 45-5-625(1)(d), MCA. Therefore, the sentence was not illegal. Marsh asks us to instead exercise plain error review of what he believes was the sentencing court's reliance on an erroneous interpretation of sentencing laws in effect at the time. *See* § 46-18-208, MCA (2017); § 46-18-201(3)(a)(iv)(A), MCA; § 46-23-1011(6), MCA. In essence, Marsh disputes the District Court's efforts to reverse-engineer a sentence ensuring the desired level of long-term supervision, thereby abandoning an otherwise suitable DOC commitment sentence in order to avoid encountering statutory trap-doors to an early discharge from supervision.

¶13 However, before we exercise discretionary review of the District Court's reliance on the relevant statutory provisions, Marsh must "firmly convinc[e]" us that review is necessary to prevent a manifest miscarriage of justice, unsettled questions of fundamental fairness, or the undermining of the integrity of the judicial process. *George*, ¶ 5 (citations omitted). Marsh's extensive collection of child pornography, admitted use of peer-to-peer file sharing, prior court martial for a similar offense, compulsive behavior, and moderate risk Level II designation under the psychosexual evaluation all support the District Court's conclusion that community safety required long-term supervision over Marsh. The sentencing court determined that, under the current statuary scheme, such a result was best achieved by a lengthy prison sentence, a decision within the court's discretion. The resulting sentence—well-below the statutory maximum—does not represent a manifest

6

miscarriage of justice, an unsettled question of fundamental fairness, or an undermining of judicial integrity. Therefore, we decline to exercise discretionary review for plain error in the District Court's sentencing process here.

¶14 Marsh also argues that the sentencing court failed to take into account the criteria for non-violent offenders found in § 46-18-225, MCA. However, an absence of an explicit statement of consideration on the record does not render a sentence illegal. *State v. Nelson*, 274 Mont. 11, 20, 906 P.2d 663, 668 (1995). Marsh does not state how such an alleged error implicates his fundamental rights. As noted above, the resulting sentence in this case did not constitute a manifest miscarriage of justice, an unsettled question of fundamental fairness, or an undermining of judicial integrity. Therefore, plain error review is inappropriate for this issue.

¶15 Marsh also contends that his defense counsel's failure to raise and argue the various non-violent offender considerations from § 46-18-225, MCA, constituted an instance of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, "a defendant must demonstrate his counsel's performance was deficient or fell below an objective standard of reasonableness and establish prejudice by demonstrating a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Williams*, 2015 MT 247, ¶ 20, 380 Mont. 445, 358 P.3d 127 (citation omitted). A trial counsel's performance is deficient if it falls "below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow v. State*, 2008 MT 140, ¶ 20, 343 Mont. 90, 183 P.3d 861. The defendant must overcome a strong presumption that counsel's actions were

7

within the broad range of reasonable professional assistance. *Baca v. State,* 2008 MT 371, ¶ 17, 346 Mont. 474, 197 P.3d 948.

¶16 Section 46-18-225, MCA, requires a sentencing judge to first consider alternatives to imprisonment for nonviolent felony offenders, while examining a list of statutory considerations such as public safety, hardship upon the offender or the offender's family, and various mitigating factors. While defense counsel did not specifically cite to this statute, Marsh's attorney repeatedly pushed for an alternative to a prison sentence and presented numerous letters and witnesses from Marsh's community testifying on Marsh's behalf in a manner relevant to many of these factors. The fact that Marsh's counsel did not specifically cite to § 46-18-225, MCA, and list these factors, or demand that the District Court do so in its pronouncement, does not constitute a deviation from the broad range of reasonable professional assistance.

¶17 Additionally, there is no indication of prejudice—that the outcome would have been different if counsel had chosen to reference § 46-18-225, MCA, and explicitly address each factor. The District Court was quite clear that, despite the testimony on Marsh's behalf, the court's primary concern was the element of public safety, which the District Court deemed sufficiently protected only by a prison sentence. Marsh has not demonstrated that his counsel's performance was deficient or resulted in prejudice and therefore cannot succeed on his ineffective assistance of counsel claim.[1]

---

[1] We note that Marsh appears eligible to apply for sentence review under § 46-18-903, MCA.

¶18     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19     Affirmed.


                                        /S/ MIKE McGRATH


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE